**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

JEREMY DUPREE                           CIVIL ACTION NO. 10-1592

VERSUS                                  JUDGE S. MAURICE HICKS, JR.

DR. RAY L. BELTON,                      MAGISTRATE JUDGE HORNSBY
INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY, DR. SHARON
F. GREEN, INDIVIDUALLY AND IN
HER OFFICIAL CAPACITY, JANICE
SNEED, INDIVIDUALLY AND IN
HER OFFICIAL CAPACITY, BOARD
OF SUPERVISORS OF SOUTHERN
UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Rec. Doc. 31) filed by the

Defendants, the Board of Supervisors of Southern University and Agricultural and

Mechanical College (hereinafter "Southern University Board"), Dr. Ray Belton, Dr. Sharon

Green, and Janice Sneed (hereinafter referred to by name or collectively as "University

officials").  The Defendants' Motion for Summary Judgment rests on two distinct grounds:

(1) Southern University Board is an arm of the State and as such is immune from suit for

damages in federal court, (2) the University officials sued in both their individual and official

capacities are entitled to the defense of qualified immunity.  The Plaintiff, Jeremy Dupree

(hereinafter "Dupree"), opposes the motion.  Rec. Doc. 35.

For the reasons that follow, the Defendants' Motion for Summary Judgment is

hereby **GRANTED.**

Accordingly,

**IT IS ORDERED** that Petitioner's claims against Southern University Board, Dr. Belton, Dr. Green, and Ms. Sneed, in both their individual and official capacities, be and are hereby **DISMISSED.**

## FACTUAL BACKGROUND

This action, which is being brought under 42 U.S.C. § 1981 pursuant to the Fourteenth Amendment to the United States Constitution,[1] stems from Dupree's administrative suspension from Southern University and subsequent eviction from the student housing on Southern University's campus.  On October 19, 2009, Dupree, a white male enrolled at Southern University at Shreveport, was arrested on campus for possession of marijuana.  See Rec. Doc. 31-1; 31-3 at 4; 35-2 at 1.  The record also indicates that Dupree was in possession of alcohol at the time of the arrest.  Southern University has a policy banning illegal drugs, including marijuana, as well as alcohol from being possessed on campus.  Id.  Byron Fizer, a black male, was also involved in the same incident and was likewise arrested and treated in the same manner as Dupree.  Id.

Immediately after the October 19th arrest, Dupree was given a notice of suspension which informed him of his right to appeal under Southern University rules and regulations. Rec. Doc. 31-2 at 2; 35-2 at 2.   Because of the administrative suspension, Southern University banned Dupree from Southern University's campus and evicted him from on-campus student housing in accordance with University policies.  Rec. Doc. 1 at 5.  Dupree

---

[1]Dupree invokes pendent jurisdiction over his state law claims which have been brought pursuant to Article 1, Sections 2 and 3 of the Louisiana Constitution and Louisiana Civil Code article 2315.  Rec. Doc. 1 at 1.

signed a statement indicating that he received this information.  Id.  However, rather than submitting a letter of appeal as instructed in his letter of suspension issued by Dr. Green, Vice Chancellor of Student Affairs at Southern University, Dupree contacted Janice Sneed, an employee in the Southern University Office of Student Affairs, and Dr. Ray Belton, Chancellor of Southern University regarding his suspension and the appeal process.  Each of the three school officers, Dr. Belton, Dr. Green, and Ms. Sneed specifically advised Dupree that if he wished to appeal his suspension, he should do so in writing.  Id.  Dupree never filed a written appeal and the suspension was never reconsidered or reversed.  As a result of the suspension, Southern University did not permit Dupree to complete his classes or continue his residence in the on-campus housing for the remainder of the fall 2009 semester.  Id.  Dupree received no refund for the tuition and rent he had prepaid for the 2009 fall semester.  Rec. Doc. 35-2 at 2.  Dupree's Section 1981 claims are based on the University officials' handling of the appeal process following his arrest, which he claims deprived him of fulfillment of his contract with Southern University for on-campus housing.

## LAW AND ANALYSIS

### I.    Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "A genuine issue of material fact exists when the

---

[2]The Court notes that the amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis.  F.R.C.P. 56(a) and advisory committee's note (emphasis added).  This Court considers this change to be a distinction without a difference.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u> (citations omitted). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Patrick v. Ridge</u>, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." <u>Gen. Universal Sys., Inc. v. Lee</u>, 379 F.3d 131, 141 (5th Cir. 2004).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994); <u>Wallace v. Texas Tech Univ.</u>, 80 F.3d 1042, 1047 (5th Cir. 1996). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. <u>See</u> <u>Boudreaux v. Swift Transp. Co.</u>, 402 F.3d 536, 540 (5th Cir. 2005). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Wallace</u>, 80 F.3d at 1048 (quoting <u>Little</u>, 37 F.3d at 1075); <u>see also</u>, <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." <u>McCallum Highlands v. Washington Capital Dus, Inc.</u>, 66 F.3d 89, 92 (5th Cir. 1995), <u>as revised on denial of rehearing</u>, 70 F.3d 26 (5th Cir. 1995).  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no

genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial."  Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted."  Id., Little, 37 F.3d at 1076.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential.  Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

## II.     Section 1981 Claims

### a.  Southern University Board

42 U.S.C. § 1981 provides as follows, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...." However, there are limitations to the exercise of jurisdiction for Section 1981 claims, notably, the Eleventh Amendment to the Constitution.  "The Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department." Richardson v. S. Univ., 118 F.3d 450, 452 (5th Cir. 1997)(citing Delahoussaye v. City of New Iberia, 937 F.2d 144, 146 (5th Cir.1991)). The Fifth Circuit has directly held that Southern University and its Board of Supervisors qualify as an arm of the State of Louisiana and, as such, are entitled to Eleventh Amendment immunity.  See Richardson, 118 F.3d at 456.  The Plaintiff does not

contest this point.  See Rec. Doc. 35.  The State of Louisiana is the real party in interest, and all suits by a private party against the State are barred in federal court.  Therefore, the Board is immune from any action against it, whether for retroactive or prospective relief.  See Rodriguez v. Bd. of Trustees for State Colleges & Universities, No. 92-2448, 1993 WL 484909 (E.D. La. Nov. 2, 1993).  Accordingly, all claims against Southern University and its Board of Directors are hereby **DISMISSED.**

### b.  University Officials in their Official Capacity

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991)(internal citations omitted).  Suits against state officials in their official capacity therefore should be treated as suits against the State.  Id.  While the doctrine of Ex parte Young provides an exception to this general rule by allowing plaintiffs to sue state officials for prospective injunctive relief to end a continuing violation of federal law (see Ex parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347 (1974)), it is unclear from the record whether Dupree seeks such relief.  Dupree does not seek to be reinstated as a student in good standing or to revive the terms of his housing contract with Southern University in order to end the alleged violation of Section 1981; rather, Dupree seeks an order from this Court requiring the Defendants to change his transcript to reflect that he withdrew from his classes during the fall 2009 semester at Southern University.  It is theoretically possible to interpret this suit as seeking an injunction from this Court preventing the University officials from distributing any transcript or record

in the future indicating that Dupree had been suspended from Southern University.[3] Accordingly, out of an abundance of caution, this Court will proceed as if Dupree seeks prospective injunctive relief as it does not change the outcome or affect liability in this case. However, this federal claim brought against Dr. Belton, Dr. Green, and Ms. Sneed *in their official capacity*, is only permitted insofar as it pertains to the narrow exception arising out of Ex parte Young.

Dupree alleges that Dr. Belton, Dr. Green, and Ms. Sneed violated his constitutional and statutory rights in refusing to overturn his suspension.  These University officials' interaction with Dupree over this matter was limited.  Dr. Green sent Dupree a letter stating that he was being placed on administrative suspension for possession of alcohol/illegal drugs, narcotics or marijuana on campus, classified as a Code One Offense under Southern University's published Student Code of Conduct. Rec. Doc. 31-3 at 1. Furthermore, Dr. Green's letter informed Dupree that he had the right to submit additional evidence in a letter of appeal within four business days.  Following the issuance of the above letter, Dr. Belton and Ms. Sneed advised Dupree that if he wished to submit an appeal, he must do so in writing.  Dupree submitted nothing.  The University officials did not assist Dupree in drafting an appeal and upheld the suspension after the time period to appeal had expired.[4]

Dupree has not pointed to any statute or case demonstrating that the University

---

[3]This Court is aware that this is a generous reading of an ambiguous and unclear complaint, as Dupree's federal cause of action is brought "pursuant to 42 U.S.C. 1981, pursuant to the Fourteenth Amendment" (Rec. Doc. 1 at 1), without specifying how Dupree's transcripts would constitute a *continuing* violation of federal law.

[4]Dupree contends that, technically, it was within the power of Southern University officials to reverse his suspension without receiving a formal appeal.

officials' advice to submit any appeal in writing, their refusal to assist Dupree in drafting his appeal, or their refusal to reverse a suspension that was never appealed in writing, constitutes a violation of any constitutional right.  It is clear from the record that University officials followed Southern University's policies by advising Dupree to file a timely written appeal of his suspension.  Dupree does not have a constitutional right to receive assistance from school officials to draft an appeal.  Ultimately, Dupree's right to contract with Southern University and its student housing under Section 1981 was not violated, as the contract between Dupree and Southern University's on-campus housing was conditioned upon continued enrollment in good standing with Southern University.  Dupree's administrative suspension, which afforded Dupree sufficient due process by giving him the opportunity to appeal,[5] terminated Dupree's status as a student in good standing and ended the right be present on campus or live in student housing.

Furthermore, Dupree has not shown that the University officials intentionally discriminated against Dupree by treating him more harshly than minority university students guilty of similar offenses.  In fact, Dupree has shown that Southern University officials treated all similarly situated university students the same regardless of race.  Frazier, a black student arrested with Dupree for the same conduct, was also suspended from Southern University and evicted from the student housing.  Southern University officials treated Dupree and Frazier in exactly the same manner.  While Dupree does allege that other students' suspensions were often overturned, he has not provided this Court with evidence that Southern University overturned black students' suspensions who failed to

---

[5]A full analysis of Dupree's federal and state procedural due process rights can be found in the subsequent section pertaining to Dupree's state law claims.

appeal their disciplinary action.  After reviewing the nearly 100-page attachment provided by Dupree, much of which was irrelevant because it included documents relating to students who had properly followed Southern University's appeal process, the Court is satisfied that Dupree has not shown that he was treated more harshly than similarly situated black students.  Ultimately, Dupree has not provided any evidence demonstrating a continuing violation of any federal law; therefore, Dupree is not entitled to prospective injunctive relief of any kind.

### c.  Section 1981 Claims; Officials in their Individual/Personal Capacity[6]

"Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law and are permitted in federal court."  Hafer, 502 U.S. at 25, 112 S. Ct. at 361.  However, Defendants are entitled raise the defense of qualified immunity in an action against the officers in their individual capacity.  It is well settled that, "[p]ublic officials acting within the scope of their official duties are shielded from civil liability by the qualified immunity doctrine."  Kipps v. Caillier, 197 F.3d 765, 768 (5th Cir. 1999) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815-19, 102 S.Ct. 2727(1982); Morris v. Dearborne, 181 F.3d 657, 665 (5th Cir.1999)).  Dupree does not dispute that at all relevant times, Dr. Ray Belton, Dr. Sharon Green, and Ms. Sneed were officials or employees of Southern University and were acting in their official capacities, i.e. in the course and scope of their employment with Southern University.  See Rec. Doc. 1, 31, and 35.  Additionally, Dr. Belton, Dr. Green, and Ms. Sneed's position with

---

[6]This Court exercises federal question jurisdiction pursuant to 28 U.S.C. § 1331 as these claims against the University officials arise under the Constitution, laws, or treaties of the United States.

Southern University qualify them as public officials of the State of Louisiana. See generally, Kipps, 197 F.3d 765; Richardson, 118 F.3d 450.

Accordingly, this Court must conduct a "bifurcated analysis to assess whether the University officials are entitled to qualified immunity." Evett v. DETNTFF, 330 F.3d 681, 687 (5th Cir. 2003)(citing Harper v. Harris County, Tex., 21 F.3d 597, 600 (5th Cir.1994)). "First, the plaintiff must allege the violation of a clearly established right." Evett, 330 F.3d at 687 (5th Cir. 2003)(citing Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir.1994)). Part of the Court's analysis in this first step is to determine whether the "record shows that the violation occurred, or at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right." Kipps v. Caillier, 197 F.3d at 768 (citing Morris v. Dearborne, 181 F.3d 657, 666 (5th Cir.1999)). Second, if it is determined that the official's conduct was unconstitutional, the court must then decide whether the conduct was nonetheless "objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law." Evett, 330 F.3d at 687; see also Kipps, 197 F.3d at 768. "The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the Court." Id. Dupree's claims fail to satisfy either prong of this bifurcated analysis.

Dupree has not alleged a violation of a clearly-established right under 42 U.S.C. § 1981. "To establish a Section 1981 claim, the plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute; in this case, the making and enforcing of a contract." Bellows v. Amoco Oil Co.,

118 F.3d 268, 274 (5th Cir. 1997).[7]   It is undisputed that Dupree is a white male and is not

a member of a racial minority.  Rec. Doc. 1 at 5.  However, given the Fifth Circuit's holding

that a heightened standard for establishing a *prima facie* case is not necessary in cases

of reverse discrimination in the employment context, the Court will continue its analysis

under the presumption that all discrimination based on race is a violation of Section 1981,

regardless of whether or not Dupree was a member of a "minority."  See Young v. City of

Houston, Tex., 906 F.2d 177, 180 (5th Cir.1990); Ulrich v. Exxon Co., 824 F.Supp. 677, 683

(S.D.Tex.1993).  Therefore, to prevail on a § 1981 claim, Dupree must prove purposeful

discrimination by defendants because he is white. See, e.g., Brown v. American Honda

Motor Co., 939 F.2d 946, 949 (11th Cir.1991), cert. denied, 502 U.S. 1058, 112 S.Ct. 935,

117 L.Ed.2d 106 (1992); Lee v. Washington County Bd. of Educ., 625 F.2d 1235, 1237 (5th

Cir.1980); see also Ulrich, 824 F. Supp. 677 at 682-83.  After a thorough review of the

record, this Court hereby finds that Dupree has failed to show that there is a genuine issue

of material fact on the claim that the Defendants actually engaged in discriminatory conduct

that violated a clearly-established right.  Dupree has not supported his legally insufficient

conclusory allegations against the University officials with facts.

Nevertheless, this Court will address the second prong the Section 1981 analysis,

as the reasonableness of their conduct is an important factor in Dupree's state-law tort

claim.  In the second prong of the analysis, the Court must decide whether the conduct was

objectively reasonable under the circumstances, such that a reasonably competent officer

---

[7]Dupree cites the Eighth Circuit Case,  Williams v. Lindenwood Univ., 288 F.3d 349, 353 (8th Cir. 2002) as the appropriate standard in analyzing Section 1981 claims.  However, this standard is identical to the analysis used here under Bellows.

would not have known his actions violated then-existing clearly established law.  Evett, 330 F.3d at 687. Dupree has not presented any evidence, fact, statute, rule, or case law demonstrating a refusal to assist in the drafting of an individual student's appeal or a refusal to reverse a suspension, despite the fact that Dupree never field an appeal, violates a clearly established law.  Dupree was arrested and suspended for possession of illegal drugs on campus, an offense not only in violation of state law, but clearly against Southern University's policies.  The Court hereby finds that it was objectionably reasonable for the University officials to enforce Southern University's policies following Dupree's arrest.

### III.    State Law Claims

#### a.  Supplemental Jurisdiction

Dupree also alleges a violation of Louisiana Constitution article 1,  §§ 2 and 3, and Louisiana Civil Code article 2315.  As an initial matter, this Court hereby exercises supplemental jurisdiction over Dupree's state law claims pursuant to 28 U.S.C  § 1367. However, the Eleventh Amendment precludes federal courts from exercising pendent jurisdiction over state law claims against state officials in their *official* capacities, whether the claims are for prospective or retroactive relief. Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 101–02 (1984).  Federal courts, on the other hand, are not precluded from exercising pendent jurisdiction over state law claims against state officials strictly in their *personal* capacities.  Wilson v. UT Health Center, 973 F.2d 1263, 1271 (5th Cir.1992).  The remainder of this Court's analysis pertain to the University officials in their individual/personal capacity.

### b.  Louisiana Constitution article 1 § 2

Article 1, Section 2 of the Louisiana Constitution of 1974 states that "[n]o person shall be deprived of life, liberty, or property, except by due process of law."  Dupree alleges that the defendants violated his procedural due process rights by placing him on administrative suspension, evicting him from on-campus housing, failing to assist in formulating his appeal, and refusing to overturn the suspension.

The Louisiana Constitution's guarantee of due process does not vary semantically from the Due Process Clause of the Fourteenth Amendment. Plaquemines Parish Gov't v. River/Rd. Const., Inc., 2001-2222 (La. App. 4 Cir. 8/28/02), 828 So. 2d 16, 24 writ denied, 2002-2456 (La. 11/22/02), 829 So. 2d 1055 (citing Progressive Security Insurance Co. v. Foster, 97-2985, (La.4/23/98), 711 So.2d 675, 688).  "Consequently, federal jurisprudence is relevant in determining the nature and extent of La. Const. Art. I, § 2's due process protection."  Id.  In summary, "Article I, § 2 of [the Louisiana] state constitution, which guarantees to our citizens due process of law, embodies the fundamental fairness guarantees inherent in its federal counterpart."  In re C.B., 97-2783 (La. 3/4/98), 708 So. 2d 391, 397.  "The Louisiana Constitution due process clause does not offer greater protection against government misconduct than does federal constitutional due process." Johnson v. State, Louisiana Dept. of Educ., No. 01-2002, 2007 WL 2398815 (E.D. La. Aug. 9, 2007) aff'd sub nom. Johnson v. Louisiana State, 275 F. App'x 392 (5th Cir. 2008)(citing State v. Smith, 614 So.2d 778, 780, (La.App. 2 Cir.1993).  Given these holdings, the Court will analyze Dupree's state law claims under the standard set forth in the Due Process Clause of the Fourteenth Amendment.

Procedural due process claims require a two-part analysis. The Court must

determine: (1) whether plaintiff has a liberty or property interest whose deprivation requires that he be afforded due process; and (2) if plaintiff does have such an interest, what process is due. See generally, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). It is well settled that a student subject to school disciplinary proceedings is entitled to some procedural due process. See Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729 (1975). At its core, due process requires notice of the charges brought against the plaintiff and an opportunity to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657. However, due process is "flexible and calls for such procedural protections as the particular situation demands." Gilbert v. Homar, 520 U.S. 924, 117 S. Ct. 1807, 1809 (1997).

"Courts overwhelmingly agree that students, whether dismissed for academic or disciplinary reasons, are not entitled to as much procedural protection under the Fourteenth Amendment as employees who are terminated from their jobs." Shaboon v. Duncan, 252 F.3d 722, 730 (5th Cir. 2001). Following the principle that due process is a flexible concept, the Supreme Court held in Loudermill that a tenured public employee is only entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," as opposed to a full pre-termination adversarial hearing. Loudermill , 470 U.S. at 546. Dupree is certainly not entitled to more procedural protection that described in Loudermill. To illustrate, the Fifth Circuit has held that even if a student is dismissed for disciplinary rather than academic reasons, "[a]ll that Goss required [for disciplinary actions against students] was an informal give-and-take between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in what he deems the

proper context." Swift v. Siesel, No. 01-2691, 2002 WL 1585617 (E.D. La. July 15, 2002) (citing Horowitz, 435 U.S. at 85-86; Goss, 419 U.S. at 584).

As outlined in Whiteside v. Kay, 446 F. Supp. 716, 721 (W.D. La. 1978), Dupree was entitled to receive notice of the charges against him sufficient to prepare a defense of those charges. See Whiteside, 446 F. Supp. 716 at 721 (citations omitted). The charges need not have been drawn with the specificity required for a criminal trial proceeding. Id. Dupree was also entitled to a hearing, but the hearing need not have been in accordance with criminal trial procedure. Id. Southern University was not required to provide Dupree or his counsel with a list of witnesses and a summary of their testimony. Id. Additionally, Southern University need not have afforded Dupree the advantages of compulsory process or cross-examination. Id.

It is exceedingly clear from the record that Dupree was not deprived of his right to procedural due process. The individuals named as defendants correctly followed Southern University's policy. Dupree received a letter from Southern University Office of Student Affairs which detailed the charges against him, specifically, that he committed a Code One Offense as defined by the University's Student Handbook and Residential Living Handbook. The University also had evidence that he was in possession of alcohol on campus, which is also a violation of its policies. Southern University explained to Dupree the evidence that it had against him by advising him that they had knowledge that he had been arrested for possession of alcohol/illegal drugs, narcotics, or marijuana. Finally, the letter advised Dupree of his right to appeal in writing, which provided Dupree with the opportunity to present "his side of the story" or characterize his conduct and put it in what he deemed the proper context. Dupree failed to submit a written letter of appeal, a fatal flaw in Dupree's

claims. This Court is satisfied that requiring a student to present a written appeal to present any new evidence and tell his side of the story constitutes sufficient process under the Due Process requirement of the Fourteenth Amendment and mirrored in the Louisiana Constitution of 1974.  While this holding only applies to the Defendants in their individual capacity, this Court believes that the above reasoning would also be dispositive of all claims brought in state court by Dupree against Southern University in addition to any state law claims brought against its officers acting in their official capacity.

Additionally, Louisiana courts have previously held that an individual officer acting solely in their official capacities cannot be held personally liable for alleged violations of a plaintiff's due process rights.  See Driscoll v. Stucker, 2004-0589 (La. 1/19/05), 893 So. 2d 32, 52; see also Washington v. Louisiana, No. 11-334, 2012 WL 4159079 (M.D. La. Aug. 21, 2012) report and recommendation adopted, No. 11-334, 2012 WL 4120441 (M.D. La. Sept. 18, 2012). While Dupree alleges that Dr. Belton, Dr. Green, and Ms. Sneed "maliciously" and "outrageously" acted with deliberate indifference with regards to Dupree's constitutional, civil, and statutory rights,[8] Dupree concedes that at all relevant times these individuals named as defendants acted within the course and scope of their employment.

### c.  Louisiana Constitution article 1 § 3

Article 1, Section 3 of the Louisiana Constitution states the following:

> No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or

---

[8]To get the full scope of various adjectives used by Dupree's counsel in describing defendants' alleged conduct see Record Document 1 at 12-13.

affiliations. Slavery and involuntary servitude are prohibited, except
in the latter case as punishment for crime.

Courts have previously held that Article I, § 3, deals with *laws* that discriminate against an individual and does not create a cause of action against a private individual or company for violation of rights.  Smolensky v. General Electric Co.*,* 2000 WL 341031 (E.D.La.2000) (citing Hornsby v. Enterprise Transportation Co.*,* 987 F.Supp. 512 (M.D.La.1997).  Dupree has not alleged any specific law which discriminated against him because of race, religious ideas, beliefs, or affiliations.  Dupree has also failed to cite any law which was arbitrarily, capriciously, or unreasonably discriminated against him because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Because Dupree is not challenging a specific law, but rather the acts of the individual defendants, he does not have a cause of action under Article 1, § 3.  See Washington v. Louisiana, 2012 WL 4159079.

Dupree has only provided legally insufficient conclusory allegations that similarly situated black students were treated more favorably.  In fact, as noted above, Frazier, a black student arrested under the same circumstances as Dupree was also suspended and expelled.   Dupree never appealed his suspension as required by University policy, a key distinction between Dupree and the students he alleges were treated more favorably.  The Equal Protection Clause is not implicated when dissimilarly situated individuals are treated differently.   State v. Cooper, 2010-2344 (La. 11/16/10), 50 So. 3d 115, 132.  Dupree's claim under article 1, § 3 of the Louisiana Constitution is without merit.

### d.  Louisiana Civil Code Article 2315

Article 2315(A) states the following: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315.

"[Article 2315] represents the very foundation upon which all tort law in Louisiana has been constructed; it provides the causes giving rise to tort actions and denominates the persons who possess the right to assert such causes of action, as well as the preferences among the different categories of such claimants." Hightower v. Dr. Pepper Bottling Co. of Shreveport, Inc., 117 So. 2d 642, 654 (La. Ct. App. 1959). Dupree has failed to specify with clarity exactly how Article 2315 was allegedly violated by the defendants. However, it appears from a liberal reading of the pleadings that Dupree alleges Dr. Belton, Dr. Green, and Ms. Sneed "maliciously, negligently, and outrageously" acted with deliberate indifference with regards to Dupree's constitutional, civil, and statutory rights in violation of Section 2315, which resulted in severe mental, physical, and emotional injuries. As has been extensively analyzed throughout this memorandum, it is exceedingly clear from the record that neither Dupree's federal or state constitutional/statutory rights were violated. Therefore, such claims cannot form the basis of Dupree's article 2315 allegation, as no wrong has been done. Additionally, defendants could not have acted negligently in violating Dupree's rights because no rights were actually violated.

Finally, the Court will address Dupree's allegation that the Defendants' actions toward him constituted intentional infliction of emotion distress under Louisiana law. See Rec. Doc. 1 at 12. In White v. Monsanto Co., 585 So.2d 1205 (La.1991), the Louisiana Supreme Court set forth the following criteria by which such claims are determined: (1) the conduct of defendants was extreme and outrageous; (2) the emotional distress suffered by plaintiff was severe; and (3) the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. See Adamo v. Bd. of Sup'rs of Louisiana State Univ., No. 93-4297, 1994 WL

18 of 20

202368 (E.D. La. May 16, 1994).

Dupree has not satisfied the first criteria, therefore, this Court need go no further in its analysis.  Under White,

> "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."

White, 585 So.2d at 1209.  Dr. Belton, Dr. Green, and Ms. Sneed's actions were not extreme or outrageous, and certainly do not go beyond all possible bounds of decency so that it is utterly intolerable in a civilized community.

## CONCLUSION

Based on the foregoing analysis, the Court finds that there is no genuine issue or dispute as to any material fact and the movant is entitled to judgment as a matter of law. The Board of Supervisors of Southern University is entitled to Eleventh Amendment immunity.  Additionally, Dr. Belton, Dr. Green, and Ms. Sneed are entitled to qualified immunity.  The record clearly demonstrates that Dupree's constitutional rights were not violated.  Even if Dupree had met his burden with respect to showing a violation of a constitutional right, the individually named defendants' conduct was nonetheless objectively reasonable under the circumstances, such that a reasonably competent officer would not have known their actions violated then-existing clearly established law.  The record shows that no federal or state constitutional due process or equal protection violation occurred. All federal and state claims of the Plaintiff are without merit.

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Rec. Doc. 31) be and is hereby **GRANTED** and the Plaintiff's claims in this case are hereby **DISMISSED.**

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26th day of February, 2013.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE